# The Baltimore and Liberty Turnpike Company *vs.* Charles H. Moale, and others.

### *Contract—Right of Way—Lien.*

A turnpike company, by a contract in the form of a deed, duly executed and recorded, sold a right of way to a railroad company, and stipulated, without reserving a lien therefor, that the

railroad company should pay for such right of way a hundred dollars a year, for the time they might use it, or $1666 if they wanted the use in perpetuity. The railroad company after using it for some years, became insolvent, and its property was sold under foreclosure of mortgage, and the proceeds distributed among the mortgage creditors. At the time of the foreclosure the railroad company was indebted to the turnpike company for some arrears of the annual sum agreed to be paid for the right of way. To recover these arrears, the turnpike company filed a bill in equity against the mortgage creditors of the railroad who had received the proceeds of sale, claiming a lien on the rails, and the right to follow the proceeds of sale into the hands of the creditors. HELD:

That the complainant had no such lien on the property of the railroad company.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the lower Court (WRIGHT, J.) dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, BRYAN, and McSHERRY, J.

*Samuel Snowden,* for the appellant.

*Fielder C. Slingluff,* and *Arthur W. Machen,* for the appellees.

STONE, J., delivered the opinion of the Court.

In 1874 the Baltimore and Liberty Turnpike Company entered into the following agreement, in the form of a deed, with the Baltimore and Randallstown Railroad Company:

"This deed of right of way made this 17th day of September, 1874, &c., witnesseth, that in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, the Baltimore and Liberty Turnpike

Company doth grant unto the said Baltimore and Randallstown Railroad Company, its successors and assigns, as much of the present road bed as may be necessary for the crossties and rails of the said Baltimore and Randallstown Railroad Company, with the free and unimpeached right of passing to and fro on said railway tracks at all hours of the day and night with passengers (no freight to be carried) from the City of Baltimore, where the said Baltimore and Liberty Turnpike Company commences under its charter, and the present terminus of said railway, as built to the Lake House, in Baltimore County; the said Baltimore and Randallstown Railroad Company to make use of either side of the Baltimore and Liberty Turnpike Road and its side roads it may elect, and to cross said road where it may be necessary to do so; subject however to the annual charge for said right of way or user the sum of one hundred dollars per annum, payable on the first day of January and July in every year in equal instalments of fifty dollars each, accounting from the first day of July, 1873; provided that the said Baltimore and Liberty Turnpike Company will receive the sum of sixteen hundred and sixty-six dollars in full demands for said right of way, if the said Baltimore and Randallstown Railroad shall wish to capitalize said annual payment at any time.''

This deed was duly executed and recorded. The Railroad Company entered upon the right of way thus acquired, and executed a mortgage on their property, including the rails, to certain of its creditors. This mortgage some years afterwards was foreclosed, the rails were sold by the trustee and the whole proceeds distributed under the order of Court to the mortgage creditors. At the time of the foreclosure and sale of the rails the Railroad Company was indebted to the Turnpike Company for some arrears of the annual sum agreed to be paid for the right of way, and for this indebtedness the

Turnpike Company filed a bill in equity against the mortgage creditors of the railroad, who had received the proceeds of sale, claiming a lien on the rails, and the right to follow the proceeds of sale in the hands of the creditors.

The whole of the complainants' claim is based upon a supposed equitable lien. If they have no lien they have no claim that they can enforce in this suit. Such lien, if any such exists, must appear upon the face of the contract, or be gathered with reasonable certainty from its terms. But by no process of reasoning can we come to the conclusion that the parties to this contract intended or contemplated a lien upon this property. On the contrary, taking the terms of the contract, and all the surrounding circumstances, we are forced to the conclusion that they did not so intend.

The Turnpike Company agreed to allow the Railroad Company to use a part of their road as long as the Railroad Company chose to do so, upon the payment of a hundred dollars a year for the time they might use it. If they wanted the use in perpetuity they might have it upon the payment of sixteen hundred and sixty-six dollars. The Railroad Company used it for some years, and becoming insolvent, its property was sold and the proceeds distributed among those who had a lien on it. If the parties had intended a lien, there was nothing easier than to have reserved it in the contract, which was very formally drawn, in the shape of a deed. Soon after the execution of the deed, the Railroad Company did give a lien in the shape of a mortgage to other creditors. Every fact surrounding the transaction, as well as the terms of the contract itself, negative all intention to create a lien of any sort. We think it entirely unnecessary to notice other defences that have been taken to the bill, as the view we have taken disposes of the

whole case, and the decree dismissing the bill will be affirmed with costs.

*Decree affirmed.*

(Decided 15th November, 1889.)